Thank you. May it please the Court, Van Arvanites, on behalf of Maynard Michael Old Chief, I appear from the Division of Great Falls, Montana, the District of Montana. The issue is whether or not the District Court was correct in applying a two hour... Mr. Arvanites, excuse me for just a moment, if you could stop the clock for just a moment. We have two counsel and two appellants here. Are you going to allocate time between the two of you, or will you speak for both? Yes, I will mostly speak about the restraint issue. No, I'm just talking about allocation of your ten minutes between you. Mr. Ashley and I have discussed that, and we are going to see if we can split that time up, five minutes. Okay, but you know you have ten minutes for your entire side, and once you consume your colleague's time, there's nothing left. With all due respect to Mr. Ashley, who I know and respect, I will do my best. All right, you'll try to use about five minutes, and then he'll have the remaining five. Is that the idea? Yes, sir. Very well. You may proceed. Thank you. The issue is whether the district court erred in granting the two-level enhancement under 3A.1.3 for restraint of victim. Within the frontier of the legal landscape, there have been much, let's call it dialogue, if you will, with regard to whether or not, when there is an independent basis for physical restraint within the context of the offense, it is to be given. Both our brief and the government's brief cite United States v. Wilson, a robbery, or a carjacking, rather, where the physical restraint was clearly independent of the carjacking. United States v. Osaie, which was a robbery of a Dunkin' Donuts, clearly independent of restraint, as well as United States v. Johnson, in which the appellant attempted to simulate or at least create an analogy between force and restraint, and the court said no. There's several different ways you can define force, and therefore, restraint itself is an independent basis. On the other side, there's a little more tension, if you will, between Chikora and the case that we cite and primarily rely on, United States v. Mikola Younis. And in Chikora, it's more of a temporal issue. Chikora focused – Chikora's facts were concerning dragging one person from point A to point B, slitting his throat, and then dragging him somewhere else where a 360-pound oven, if you will, a weight of some sort, restrained him and killed him. Clearly, Chikora, at the end of 791, early 792 of the page of Chikora, says that what makes Mikola Younis unique is that it happened during – And that is very similar to the situation in our case where there was a chasing, there was a holding, and within that amount of time, similar to Mikola Younis, the situation happened that Mr. Old Chief, my client, stabbed several times the victim. And so within that context, we believe that it merges within the assault. It is not independent. It is one with the assault itself, and that is – If we were to find Johnny, agree that Johnny had engaged in forcible restraint, would Maynard be picked up under co-conspirator? I think the issues are similar. You know, if you look at Mikola Younis, there were co-defendants involved who were responsible for restraining, and it went to everyone, the issue of the merging of the restraint. And therefore, we would ask the court to vacate that – vacate the sentence, remand for any sentencing, vacate the enhancement, I mean. Thank you. Thank you, counsel. Yes. May it please the court, I'm Neal Ashley. I'm from Helena. I represented the defendant, Johnny Old Chief. I'm a CJA panel attorney.  The definition of restraint is forcible restraint, and Black's Law Dictionary defines forcible as effected by force or threat of force against opposition or resistance. And in this particular case, the – several cases decided by various circuits say that the victim need not be actually tied or bound or locked in a room with dynamite, but they do require some type of restraint. Well, if one of the defendants is holding the victim while the other one is stabbing him, can't the jury find that there was restraint? Well, there are two situations that we are on. Number one, the evidence reflected that my client, Johnny, momentarily held Redhead. Redhead was able to get away, and he himself testified that he got away from Johnny, put up his arm to stave off the first blow from Maynard. So my – But let me be sure I understand. They were chasing, right? And Johnny held Redhead down, and then he – Redhead got away, and meanwhile Maynard had time to come up and catch up and stab him, didn't he? Well, I'm not sure that he necessarily held him down, Your Honor. He did momentarily hold him. Yeah? Without physical restraint? Well, if somebody – the one case that the government cites in which the woman was held down while another person raped her, clearly she – Well, wait a minute. You're being chased down the street outside, and one of the two guys tackles you and gets you down, and you fall down, and immediately, you know, within five seconds, are able to get back up and ward off the number two guy who comes along and then stabs you. Well – You wouldn't have been stabbed if you'd been unimpeded. So why isn't that enough to find forcible restraint? It's questionable exactly what went on there, Your Honor. We have the testimony of Redhead, the victim. We have the testimony of Maynard and the testimony of Johnny. And interestingly enough, when law enforcement arrived, Johnny was on the ground with Redhead, but Maynard was standing there with a knife, and there was somebody else, one of Redhead's friends, standing there with a fence post in his hand. So it's not clear exactly what happened there, Your Honor. As I say – Well, then that's sufficiency of the evidence, but on the – it sounds like – I mean, you're saying that there was no restraint at all exercised by Johnny? Clearly, Your Honor.        I'm saying that there was no restraint exercised by Johnny. Okay. And additionally, I have the argument of the use of the weapon that was involved in this particular case. And my argument there is set forth in the brief that most of the cases that argue about the use of a weapon, they're like conspiracies, co-defendants robbing a bank, that type of thing. For instance, Mr. Arvanites and myself decide to rob a bank downtown, and I tell him I'm going to walk up and tell her, give me your money because I've got a gun. And then during the incident, I pull the gun. That's foreseeable. I think in this particular case that Johnny's being targeted with the four points for the use of a weapon is ill-conceived. I think that he didn't know that Maynard had the knife until Maynard was hit over the head and drew the knife at the person that he hit him. And to say that that was what then transpired, his going to help his brother, was a use and that therefore he should get an additional two or three years, as I say, I think that's misplaced, Your Honor. Thank you, counsel. We'll hear from the government. Good morning, Your Honors. I'm Carl Rosted from the U.S. Attorney's Office in Montana. I did write the brief, so I'll accept full responsibility for it. However, I did not try the case, so I don't have as good a command of the trial as maybe the person that actually tried it. But I don't think that from the record that's before the Court that the facts are that unclear or that they were clearly erroneous when Judge Haddon determined that there was physical restraint. The guideline does not require any amount of force. It merely says if the victim was physically restrained, increase by two levels. It doesn't indicate the level of force or forcibly. But I think even under these circumstances, that could be an easy conclusion. This scenario is fairly clear. There's a house party. A violent argument erupts. Mr. Redhead seeks to get out of there. The old chiefs pursue. They catch him a few houses down in the backyard and hold on to him and stab him. Maybe it's more complicated than that, but it appears from the record that it is. The argument might have been better if we had prosecuted for the defense, for the defendants, if we had prosecuted Maynard for the assault on Ms. Mittens at the house party where she was shoved up against the wall and a small cut across her throat with the knife was made. It wasn't life-threatening or substantial in its effect, but that was momentary and it was immediate, and I could see the argument there made that it merged with the assault that both Mr. Arbonides and Mr. Ashley are trying to make, that this merger somehow makes the enhancement inappropriate. But the chasing and the fact that there are more than one encounter as they're chasing Mr. Redhead, and as Your Honor has pointed out, they did catch him and slow him down at least so Maynard could get there. I mean, Johnny Lynn did that, and then when Maynard got there, he did the stabbing while Johnny Lynn held on to him. I think that the Michelunas case that's cited out of the Fourth Circuit obviously is not controlling here. It's factually very close to what's happened here, but as we've explained in our brief, Michelunas is criticized not only in the dissent in that case, but by other cases that have come after it as being poorly analyzed in terms of this concept of merger. The point that Michelunas' majority made might be correct, but not on the facts that they had before them, in the sense that every assault obviously does every murder, I would assume involves some restraint because of the interference with the victim. But in this particular set of facts, you have a physical restraint that is over and above that necessary to commit the crime. So if the Court has no questions, I thank you for your time. No questions, counsel. The case just argued will be submitted for decision, and we'll hear argument in Valentine v. Astro.
judges: Goodwin, O'scannlain, Fisher